**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER LEE KAUFMAN and** **DAMIEN W. KAUFMAN, Individually and as** **ADMINISTRATORS OF THE ESTATES** **OF ABIGAIL KAUFMAN, a minor, deceased** **and BRIANNA BAER, a minor, deceased** 630 Linden Avenue Hellertown, PA  18055 | **CIVIL ACTION NO:** **5:22-cv-03765-JFL** |
| *Plaintiffs*, v. | |
| **JETSON ELECTRIC BIKES, LLC** 86 34th Street, Fourth Floor Brooklyn, NY, 11232 | **JURY TRIAL DEMANDED** |
| and | |
| **TARGET CORPORATION** 1000 Nicollet Mall Minneapolis, MN  55403 *Defendants.* | |

<u>**CIVIL ACTION -  FIRST AMENDED COMPLAINT**</u>

Plaintiffs, Jennifer Lee Kaufman and Damien W. Kaufman, in their individual capacity and as Co-Administrators of the Estates of Abigail Kaufman, a deceased minor and Brianna Baer, a deceased minor, by and through their undersigned counsel, Kline & Specter, PC, hereby bring this action against Defendants, Jetson Electric Bikes, LLC and Target Corporation and in support thereof aver as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1.      Plaintiff, Jennifer Lee Kaufman, is an adult person and resident of the state of Pennsylvania residing at 630 Linden Avenue, Hellertown, Pennsylvania 18055.

2.      Plaintiff, Damien W. Kaufman, is an adult person and resident of the state of Pennsylvania residing at 630 Linden Avenue, Hellertown, Pennsylvania 18055.

3.      Plaintiff, Jennifer Lee Kaufman, is a parent and natural guardian of deceased minors Abigail Kaufman (10 y/o) and Brianna Baer (15 y/o).

4.      Plaintiff, Damien W.  Kaufman, is a parent and natural guardian of deceased minors Abigail Kaufman (10 y/o) and Brianna Baer (15 y/o).

5.      Plaintiffs, Damien W. Kaufman and Jennifer Lee Kaufman are husband and wife.

6.      Plaintiffs file these Wrongful Death and Survival Actions individually, and in their capacity as Co-Administrators of the Estates of Abigail Kaufman and Brianna Baer, deceased-minors.

7.      Defendant, Jetson Electric Bikes, LLC, is a corporation with its principal place of business at 86 34th Street, Fourth Floor, Brooklyn, New York 11232.

8.      At all relevant times hereto, Jetson Electric Bikes, LLC conducted systematic and continuous business activity within this judicial district.

9.      More specifically, Jetson Electric Bikes, LLC, (herein after "Jetson") distributes products for sale at retail stores within the Commonwealth of Pennsylvania within this judicial district, including, among other places, the Target Store located at 610 North West End Boulevard, Quakertown, Pennsylvania 18951, where Plaintiffs purchased the Jetson Rogue Hoverboard at issue in this case.

10.     Defendant Target Corporation. (hereinafter "Target") is an American corporation, organized and existing under the laws of the State of Minnesota with a principal place of business and corporate headquarters located at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

11.     Target owns and operates retail stores within this judicial district, including, among other places, the Target  store at 610 North West End Boulevard, Quakertown, Pennsylvania 18951, where Plaintiffs purchased the Jetson Rogue Hoverboard at issue in this case.

12.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332 as Plaintiffs and Defendants are residents of separate states and because the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim, namely Plaintiffs purchase of the Jetson Rogue Hoverboard at issue, as well as the accident involving it, occurred in this judicial district.

14.     Alternatively, venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendants have sufficient minimum contacts with the Commonwealth of Pennsylvania and have intentionally availed themselves of the markets within Pennsylvania through the promotion, sale, marketing, and distribution of their  products, including the Jetson Rogue Hoverboard.

**OPERATIVE FACTS**

15.     Jetson Electric Bikes, LLC and Target Corporation designed, manufactured, marketed, warranted, distributed and sold the Jetson Rogue Hoverboard at issue.

16.     The Defendants marketed, advertised and sold the Jetson Rogue Hoverboard as a product that is safe and made for "everyday adventures" when the Defendants knew or should have known that the Jetson Rogue Hoverboard, while charging could ignite without warning causing catastrophic injuries and/or death.

17.     The Jetson Rogue Hoverboard is a hoverboard that was primarily marketed towards children.

3

18.     Due to the defective and unreasonably dangerous design of the Jetson Rogue Hoverboard, owners were at an increased risk of fire related injuries while charging the Jetson Rogue Hoverboard.

19.     Before and during their sale and marketing of the Jetson Rogue Hoverboard, the Defendants knew or should have known that the defective and unreasonably dangerous design of the Jetson Rogue Hoverboard could cause fires subjecting its owners and anyone in close proximity to catastrophic injuries and/or death.

20.     Before and during their sale and marketing of the Jetson Rogue Hoverboards, the Defendants knew or should have known that the design and makeup of the Jetson Rogue Hoverboard caused, and increased the risk of causing, permanent and catastrophic injuries to its owner and anyone within proximity of the product. Said injuries include burns, smoke inhalation, and/or death.

21.     Defendants knew or should have known that the Jetson Rogue Hoverboards were subject to degradation and self-discharge resulting in short circuits which causes heat and ignition leading to fires, catastrophic injuries and death.

22.     Defendants knew or should have known that the Jetson Rogue Hoverboards did not comport with the applicable product safety standards.

23.     Defendants knew or should have known that the Jetson Rogue Hoverboards would cause an electrical short or circuit failure at the location of electrical activity which causes heat, and ignition leading to fires, injuries and death.

24.     Defendants knew or should have known that the Jetson Rogue Hoverboards had defects resulting in electrical shorts and/or circuit failures which causes heat and ignition leading to fires, injuries and death.

4

25.     Despite knowing that the design and makeup of the Jetson Rogue Hoverboards caused, and increased the risk of causing, permanent and catastrophic injuries and death, the Defendants continued to market, sell, advertise and tout the Jetson Rogue Hoverboard as a safe product.

26.     Despite knowing that the design and makeup of the Jetson Rogue Hoverboard caused, and increased the risk of causing, permanent and catastrophic injuries and death, the Defendants knowingly, purposely, and consciously concealed their knowledge of these serious dangers associated with the Jetson Rogue Hoverboard.

27.     On or about December 9, 2018, Plaintiff, Damien Kaufman, purchased the Jetson Rogue Hoverboard at Target (authorized dealer of the Jetson Rogue Hoverboard) located on 610 North West End Boulevard, Quakertown, Pennsylvania 18951 as a Christmas gift for Plaintiff minor-decedent, Brianna Baer.

28.     The Jetson Rogue Hoverboard, and/or its component parts, were designed and/or manufactured by Defendants.

29.     On or about April 1, 2022, Plaintiff minor-decedent, Abigail Kaufman began charging the Jetson Rogue Hoverboard inside her first floor bedroom.

30.     While charging, the Jetson Rogue Hoverboard ignited causing the home to be engulfed with flames and smoke.

31.     Plaintiff, Jennifer Kaufman, was able to escape the home from her first floor bedroom.

32.     Plaintiff, Damien Kaufman, was inside the home's garage at the time of the fire, but was unable to enter the home due to the intensity of the fire.

33.     Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer, were trapped on the second floor inside Brianna Baer's bedroom.

34.     Plaintiffs, Jennifer Kaufman and Damien Kaufman, stood on the front lawn of their home and watched helplessly as Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer, awaited fire rescue.

35.      Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer, were retrieved by the Dewey Fire Department from the home's second floor and transported to St. Luke's Hospital.

36.     At approximately 6:37 am, Plaintiff minor-decedent, Brianna Baer was pronounced dead as a result of smoke inhalation and/or effects of the fire.

37.     At approximately 8:25 am, Plaintiff minor-decedent Abigail Kaufman was pronounced dead as a result of smoke inhalation and/or effects of the fire.

38.     Plaintiff's home at 630 Linden Avenue, Hellertown, Pennsylvania 18055 and the personal belongings therein were completely destroyed.

39.     Due to the unreasonably dangerous and defective design of the Jetson Rogue Hoverboard, as described throughout this Complaint, Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer were caused to burn and suffer smoke inhalation, which resulted in their deaths, witnessed by their parents, Plaintiffs, Jennifer Kaufman and Damien Kaufman on April 1, 2022.

40.     Defendants' manual and website fails to acknowledge the risk of severe injury or death to owners through fire caused by its defective design, and they proceeded to market and sell the Jetson Rogue Hoverboard anyway.

41.     As set forth more fully below, Defendants engaged in negligent, reckless, intentional, fraudulent, and/or outrageous conduct which caused, increased the risk of harm, and/or was a substantial contributing causal factor that resulted in Plaintiffs, Jennifer and Damien

Kaufman's damages which include Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer's deaths, damages, and, but are not limited to, the following:

a)   Death;

b)   Smoke Inhalation;

c)   Burns;

d)   Cardiac arrest;

e)   Bleeding;

f)   Hypoxia;

g)   Disfigurement;

h)   Pain and suffering;

i)   Loss of life's pleasures;

j)   Mental anguish;

k)   Embarrassment;

l)   Lost wages;

m)  Loss of earning capacity;

n)   Funeral expenses;

o)   Medical expenses;

p)   Property damage;

q)   All damages allowable under the Survival Act, 42 Pa. C.S.A. §8302, the applicable Rules of Civil Procedure and the decisional law interpreting the Survival Act, including the total estimated future earning power less the cost of personal maintenance, and/or pain and suffering endured by Abigail Kaufman and Brianna Baer prior to their deaths, including but not limited to, physical pain and suffering, mental pain and suffering, mental suffering, loss of life's pleasures, disfigurement and humiliation; and

r) All damages allowable under the Wrongful Death Act, 42 Pa. C.S.A. § 8301, the applicable Rules of Civil Procedure and all decisional law interpreting the Wrongful Death Act, including damages for medical, funeral, and burial expenses, expenses of administration, monetary support Abigail Kaufman and Brianna Baer  would have provided during their lifetime, the value of services provided or which could have been expected to have been performed in the future by Abigail Kaufman and Brianna Baer, and all pecuniary losses suffered as a result of their deaths.

## COUNT I
## STRICT PRODUCTS LIABILITY
### Plaintiffs v. Defendants

42.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

43.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of fire related injuries inherent in the design of the Jetson Rogue Hoverboard.

44.     At the time Defendants designed, manufactured, marketed, sold, and distributed the subject Jetson Rogue Hoverboard, it was defective in its design, unreasonably dangerous, and unsafe for its intended purpose because it did not provide adequate protection and/or warning against the foreseeable risk of fire related injuries and death.

45.     The Jetson Rogue Hoverboard at issue was in the same or substantially similar condition as when it left the possession of Defendants.

46.     Plaintiffs did not misuse or materially alter the Jetson Rogue Hoverboard.

47.     The Jetson Rogue Hoverboard did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

48.     Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the Jetson Rogue Hoverboard safe.

49.     The Jetson Rogue Hoverboard was defective, subjecting Defendants to strict liability, in one or more of the following respects:

8

a)  the Jetson Rogue Hoverboard was designed such that it could ignite while charging causing heat and fire to property and person;

b)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to degradation through self-discharge;

c)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to short circuits;

d)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to electrical short or circuit failure at the location of electrical activity;

e)  the Jetson Rogue Hoverboard did not comport with the applicable product safety standards;

f)  the Jetson Rogue Hoverboard was not adequately tested before distribution and sale;

g)  the Jetson Rogue Hoverboard marketing, instructions, and/or packaging, misrepresented its safety characteristics and its potential to produce heat and ignite;

h)  Defendants failed to design and/or utilize proper designs for manufacture;

i)  assembly, sale and distribution of the subject hoverboard to minimize the risk of injury to the owner, operators and anyone within close proximity of the defective product;

j)  Defendants failed to adequately inform and warn purchasers and ultimate users of the hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

k)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product in a defective condition;

l)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product that was unreasonably dangerous to the user and individuals in close proximity to the product;

m)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

n)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which lacked all necessary safety features to protect users of said product;

o)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which could be designed more safely;

p)  Defendants marketed the Jetson Rogue Hoverboard as safe;

q)  Defendants failed to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the Jetson Rogue Hoverboard;

r)  other misrepresentations regarding the Jetson Rogue Hoverboard that may be identified in the course of discovery;

s)  dangerous design defects in the circuitry, wiring, plug and/or other components of the product;

t)  dangerous design defects in the exposed electrical contacts within the product;

u)  dangerous design defects which permit the dislodging of internal components;

v)  dangerous design defects which permit improper contact between components;

w)  dangerous design defects which result in the failure and/or breaking of internal components;

x)  dangerous design defects which cause the improper exposure of internal components; unsafe manufacturing defects in the circuitry, wiring, plug, exposed electrical contacts and/or other components of the product;

y)  malfunction of the circuitry, wiring, plug and/or other components of the product;

z)  unsafe manufacturing defects which permit the dislodging of internal components of the product;

aa) unsafe manufacturing defects which result in the failure and/or breaking of components of the product;

bb) unsafe manufacturing defects which permit improper contact between components of the product;

cc) unsafe manufacturing defects which cause the improper exposure of internal components of the product;

dd) failure to recall the product when a dangerous condition existed whereby it could ignite while charging causing heat and fire;

10

ee) failure to recall the product upon learning that it was unsafe for its intended and/or foreseeable use; and

ff) being otherwise defective as may be learned through discovery.

50. The defectiveness and unreasonably dangerous condition of the Jetson Rogue Hoverboard were direct and proximate causes of Plaintiffs, Jennifer Kaufman and Damien Kaufman, and Plaintiff minor-decedents, Abigail Kaufman and Brianna Baer's severe and permanent injuries and damages, as previously set forth herein.

51. Defendants are strictly liable to Plaintiffs for designing, manufacturing and failing to warn of the dangers of a defective and unreasonably dangerous product. The inherent risks associated with the Jetson Rogue Hoverboard outweighed the benefits of its use, as a safer alternative design was economically and technologically feasible at the time the product left the control of Defendants.

52. Alternatively, the Jetson Rogue Hoverboard "malfunctioned" as that term is used in Ducko v. Chrysler Motors Co., 639 A.2d 1204 (Pa. Super 1994) (citing Rogers v. Johnson & Johnson Products, Inc., 565 A.2d 751, 754 (Pa. 1989)).

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT II**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**
**Plaintiffs v. Defendants**

53.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

54.     At all relevant times hereto, Defendants knew or should have known of the substantial dangers and inherent risks of fire related injuries involved in the reasonably foreseeable use of the Jetson Rogue Hoverboard.

55.     Defendants knew or should have known that the substantial dangers and inherent risks of fire related injuries and death involved in the reasonably foreseeable use of the Jetson Rogue Hoverboard were not readily recognizable to an ordinary consumer or user and that such person would use the Hoverboard without inspection for defects.

56.     Defendants knew or should have known of the foreseeable risk of fire related injuries and death inherent in the design of the Jetson Rogue Hoverboard.

57.     Defendants acted negligently and recklessly by failing to provide necessary safety materials and failing to adequately warn of the substantial dangers and known and foreseeable risk of fire related injuries, by failing to provide adequate warnings regarding one or more of the following:

  a) the Jetson Rogue Hoverboard was designed such that it could ignite while charging causing heat and fire to property and person;

  b) the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to degradation through self-discharge;

  c) the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to short circuits;

12

d) the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to electrical short or circuit failure at the location of electrical activity;

e) the Jetson Rogue Hoverboard did not comport with the applicable product safety standards;

f) the Jetson Rogue Hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

g) the Jetson Rogue Hoverboard was not adequately tested before distribution and sale;

h) dangerous design defects in the exposed electrical contacts within the product;

i) dangerous design defects which permit the dislodging of internal components;

j) dangerous design defects which permit improper contact between components;

k) dangerous design defects which result in the failure and/or breaking of internal components;

l) dangerous design defects which cause the improper exposure of internal components;

m) unsafe manufacturing defects in the circuitry, wiring, plug, exposed electrical contacts and/or other components of the product;

n) malfunction of the circuitry, wiring, plug and/or other components of the product;

o) unsafe manufacturing defects which permit the dislodging of internal components of the product;

p) unsafe manufacturing defects which result in the failure and/or breaking of components of the product;

q) unsafe manufacturing defects which permit improper contact between components of the product;

r) unsafe manufacturing defects which cause the improper exposure of internal components of the product; and

s) being otherwise defective as may be learned through discovery.

58.     Any such safety material and/or warning that may have been provided and/or attached to the Jetson Rogue Hoverboard was inadequate, nullified or rendered ineffective by contrary representations made by Defendants regarding the safety of the hoverboard.

59.     As a result of Defendants' recklessness and failure to adequately warn, Plaintiffs neither knew nor had reason to know about the existence of defects in the Jetson Rogue Hoverboard.

60.     At all relevant times hereto, Plaintiffs used the Jetson Rogue Hoverboard in a reasonably foreseeable manner.

61.     Defendants' failure to warn of the substantial dangers and inherent risks of fire related injuries associated with the reasonably foreseeable use of the Jetson Rogue Hoverboard was the direct and proximate cause of Plaintiff minor-decedents' injuries and damages, as previously set forth.

62.     Defendants are strictly liable for failing to warn consumers and users of the substantial dangers and inherent risks of fire related injuries associated with the reasonably foreseeable use of the Jetson Rogue Hoverboard.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT III
## NEGLIGENCE
## Plaintiffs v. Defendants

63.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

64.     At all relevant times hereto, Defendants owed a duty to consumers to use reasonable care in the way they designed, manufactured, marketed, sold and distributed the Jetson Rogue Hoverboard.

65.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of fire injuries inherent in the Jetson Rogue Hoverboard.

66.     Defendants breached the duty of care they assumed to consumers and were negligent, careless and reckless in designing, manufacturing, marketing, selling, and distributing the Jetson Rogue Hoverboard in one or more of the following respects:

a)  the Jetson Rogue Hoverboard was designed such that it could ignite while charging causing heat and fire to property and person;

b)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to degradation through self-discharge;

c)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to short circuits;

d)  the Jetson Rogue Hoverboard was manufactured such that the batteries were subject to electrical short or circuit failure at the location of electrical activity;

e)  the Jetson Rogue Hoverboard did not comport with the applicable product safety standard;

f)  the Jetson Rogue Hoverboard was not adequately tested before distribution and sale;

g)  the Jetson Rogue Hoverboard marketing, instructions, and/or packaging, misrepresented its safety characteristics and its potential to produce heat and ignite;

h)  Defendants failed to design and/or utilize proper designs for the manufacture, assembly, sale, and distribution of the subject hoverboard to minimize the risk of injury to the owner, operators and anyone within close proximity of the defective product;

i)  Defendants failed to adequately inform and warn purchasers and ultimate users of the hoverboard's high propensity for instability to produce heat, ignite, explode and/or cause fires;

j)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product in a defective condition;

k)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product that was unreasonably dangerous to the user and individuals in close proximity to the product;

l)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

m)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which lacked all necessary safety features to protect users of said product;

n)  Defendants designed, assembled, manufactured, sold, supplied and/or distributed a product which could be designed more safely;

o)  Defendants marketed the Jetson Rogue Hoverboard as safe;

p)  Defendants failed to issue any post-sale modifications or additional warnings in an effort to eliminate the unreasonably dangerous nature of the Jetson Rogue Hoverboard;

q)  other misrepresentations regarding the Jetson Rogue Hoverboard that may be identified in the course of discovery;

r)  dangerous design defects in the circuitry, wiring, plug and/or other components of the product;

s)  dangerous design defects in the exposed electrical contacts within the product;

t)  dangerous design defects which permit the dislodging of internal components;

u)  dangerous design defects which permit improper contact between components;

v) dangerous design defects which result in the failure and/or breaking of internal components;

w) dangerous design defects which cause the improper exposure of internal components;

x) unsafe manufacturing defects in the circuitry, wiring, plug, exposed electrical contacts and/or other components of the product;

y) malfunction of the circuitry, wiring, plug and/or other components of the product;

z) unsafe manufacturing defects which permit the dislodging of internal components of the product;

aa) unsafe manufacturing defects which result in the failure and/or breaking of components of the product;

bb) unsafe manufacturing defects which permit improper contact between components of the product;

cc) unsafe manufacturing defects which cause the improper exposure of internal components of the product;

dd) failure to recall the product when a dangerous condition existed whereby it could ignite while charging causing heat and fire;

ee) failure to recall the product upon learning that it was unsafe for its intended and/or foreseeable use; and

ff) being otherwise defective as may be learned through discovery.

67.   Defendants' negligence, carelessness, and recklessness in designing, manufacturing, marketing, selling, and distributing the Jetson Rogue Hoverboard were the direct and proximate cause of Plaintiff minor-decedents' severe injuries and damages, as previously set forth herein.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT IV
## NEGLIGENT/RECKLESS MISREPRESENTATION
## <u>Plaintiffs v.  Defendants</u>

68.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

69.     At all relevant times hereto, Defendants knew or should have known of the foreseeable risk of fire related injuries inherent in the Jetson Rogue Hoverboard.

70.     Defendants negligently and recklessly misrepresented material facts regarding the safety of the Jetson Rogue Hoverboard in one or more of the following respects:

a)  marketing the Jetson Rogue Hoverboard as safe;

b)  failing to warn that the Jetson Rogue Hoverboard could produce heat and ignite causing fire;

c)  failing to warn that the Jetson Rogue Hoverboard could produce heat and explode causing fire;

d)  failing to issue any post-sale modifications or additional warnings in effort to eliminate the unreasonably dangerous nature of the Jetson Rogue Hoverboard, which was reasonably foreseeable; and

e)  other misrepresentations regarding the Jetson Rogue Hoverboard that may be identified in the course of discovery.

71.     Defendants knew or should have known that consumers and users, including Plaintiffs, would accept the material misrepresentations made regarding the Jetson Rogue Hoverboard's safety as true and accurate.

72.     Defendants knew or should have known that consumers, including Plaintiffs, would rely on the material misrepresentations made regarding the Jetson Rogue Hoverboard's safety when deciding whether to purchase and use it.

73.     Defendants made material misrepresentations regarding the safety of the Jetson Rogue Hoverboard with the intent to induce consumers, including Plaintiffs, to purchase and use it.

74.     Plaintiffs justifiably relied on Defendants' material misrepresentations regarding the safety of the Jetson Rogue Hoverboard when deciding whether to use it on April 1, 2022.

75.     As a direct and proximate result of Defendants' material misrepresentations, Plaintiffs suffered severe injuries and damages while the Jetson Rogue Hoverboard was being used in a reasonably foreseeable manner, as previously set forth herein. As such, Plaintiffs are entitled to recover damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

### COUNT V
### BREAK OF EXPRESS WARRANTY
### Plaintiffs v. Defendants

76.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

77.     All Defendants expressly warranted that its Jetson Rogue Hoverboards were safe and effective to members of the consuming public, including Plaintiffs.

78.     More specifically, Defendants expressly warranted that the Jetson Rogue Hoverboard was compliant with the applicable product safety standards.

79.     The Jetson Rogue Hoverboard does not conform to these express representations because it was prone to produce heat, ignite and/or explode causing fire.

80.     Therefore, the Defendants breached their express warranties to the consuming public, including, but not limited to, Plaintiffs

81.     As a direct and proximate result of the Defendant's breach of express warranties, Plaintiffs suffered the injuries and damages set forth herein, entitling them to damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**
**Plaintiffs v. Defendants**

82.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

83.     Defendants designed, manufactured, marketed, distributed, supplied, and sold its Jetson Rogue Hoverboard with an implied warranty that they were fit for the particular purpose of charging safely, knowing that consumers would rely on their skill and/or judgment to furnish suitable goods.

84.     Members of the consuming public, including consumers such as Plaintiffs, were the intended third-party beneficiaries of the warranty.

85.     Defendants' Jetson Rogue Hoverboard was not fit for the particular purpose as a safe means of charging, due to the unreasonable risks of bodily injury and death associated with its use.

86.     Plaintiffs in this case reasonably and justifiably relied on Defendants' representations that the Jetson Rogue Hoverboard was safe to charge.

20

87.     Defendants breached the implied warranty of fitness for a particular purpose, which was the direct and proximate cause of Plaintiffs' injuries and damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT VII
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE
## PRACTICES AND CONSUMERPROTECTION LAW
## 73 PA. CONS. STAT. § 201-1, et seq.
## Damien Kaufman v. Defendants

88.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

89.     At the time Defendants designed, manufactured, marketed, distributed, supplied, and sold the Jetson Rogue Hoverboards Defendants represented that the products had certain benefits that they, in fact, did not have.

90.     At the time Defendants designed, manufactured, marketed, distributed, supplied and sold its Jetson Rogue Hoverboard, represented that these products are of a quality that they, in fact, are not.

91.     Defendants violated the Unfair Trade Practices and Consumer Protection Law, giving rise to a cause of action to Plaintiff Damien Kaufman, as a purchaser of a Jetson Rogue Hoverboard, in one or more of the following respects:

> a)  Defendants warranted and represented that its Jetson Rogue Hoverboard was safe and free of defects in materials and workmanship and that they possessed safety features, which influenced reasonable consumers including Damien Kaufman's decision whether to purchase the Jetson Rogue Hoverboard; and

21

b) Defendants warranted and represented that its Jetson Rogue was complaint with the applicable product safety standards, which was not true.

92.     Defendants' failure to warn of its Jetson Rogue Hoverboards' defects was a material omission that would influence a reasonable consumer's decision whether to purchase its products. Plaintiff, Damien Kaufman, was aware of Defendants' representation regarding the characteristics, qualities, and standard of the Jetson Rogue Hoverboard due to the representations contained in the user manual, websites, packaging and other promotional materials of Defendants relating to the Jetson Rogue Hoverboards.

93.     Plaintiff, Damien Kaufman, was aware of Defendants' representations regarding the characteristics, qualities, and standards of the Jetson Rogue Hoverboard due to the representations contained in the user manual, website, packaging, and other promotional materials of Defendants relating to the Jetson Rogue Hoverboards.

94.     Plaintiff, Damien Kaufman, relied on the claimed truth of Defendant's representations and warranties concerning the Jetson Rogue Hoverboard, and he suffered personal and property damages as result of this reliance, as set forth herein.

95.     Had Plaintiff, Damien Kaufman, been adequately warned concerning the likelihood that the Jetson Rogue Hoverboard could ignite and cause fire while charging, he would have taken steps to avoid damages by, among other things, not purchasing this product.

96.     As a result of these violations of consumer protection laws, Plaintiff, Damien Kaufman, has incurred and will continue to incur severe emotional distress and pecuniary expenses related to his own treatment and, separately, his wife's treatment for severe physical and emotional injuries of her own as result of Plaintiff minor-decedents' deaths, for which Defendants are liable.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a

sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

**COUNT VIII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Plaintiff Damien Kaufman v. Defendants**

97.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

98.     Plaintiff Damien Kaufman was present in the zone of danger during the incident giving rise to this Complaint, and its aftermath, and witnessed the deaths of Plaintiff minor-decedents.

99.     More specifically, Plaintiff, Damien Kaufman, was nearby in the home's garage when the Jetson Rogue Hoverboard ignited causing his home to catch fire with Plaintiff, Jennifer Kaufman and Plaintiff minor-decedents inside causing Plaintiff minor-decedents' deaths, which occurred as a result of the negligence, carelessness, and recklessness of Defendants as previously set forth herein, and he witnessed the consequences of that negligence, carelessness, and recklessness, including Plaintiff minor-decedents severe injuries and deaths, as previously set forth herein.

100.     When Plaintiff, Damien Kaufman, saw his daughters suffering from significant burn injuries, smoke inhalation and death, he recoiled in fear and agony.

101.     The trauma and shock of Plaintiff, Damien Kaufman's contemporaneous observance of the events previously set forth herein caused him to suffer in the past, and will continue to cause him to suffer in the future, severe emotional and psychological distress and injuries, all of which have manifested physically, including but not limited to depression, nightmares, stress, anxiety and physical and psychological ailments.

23

102.     Since    the    accident,    Plaintiff    Damien    Kaufman    has    been    in psychiatric/psychological treatment for his severe emotional distress, which will continue indefinitely into the future.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

### COUNT IX
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff Jennifer Kaufman v. Defendants

103.     Plaintiffs incorporate by reference all of the above paragraphs as though set forth fully herein.

104.     Plaintiff Jennifer Kaufman was present in the zone of danger during the incident giving rise to this Complaint, and its aftermath, and witnessed the deaths of Plaintiff minor-decedents.

105.     More specifically, Plaintiff, Jennifer Kaufman, was nearby when the Jetson Rogue Hoverboard ignited causing her home to catch fire with Plaintiff minor-decedents inside causing Plaintiff minor-decedents' deaths, which occurred as a result of the negligence, carelessness, and recklessness of Defendants as previously set forth herein, and she witnessed the consequences of that negligence, carelessness, and recklessness, including Plaintiff minor-decedents severe injuries and deaths, as previously set forth herein.

106.     When Plaintiff, Jennifer Kaufman, saw her daughters suffering from significant burn injuries, smoke inhalation and death, she recoiled in fear and agony.

24

107.   The trauma and shock of Plaintiff, Jennifer Kaufman's contemporaneous observance of the events previously set forth herein caused him to suffer in the past, and will continue to cause her to suffer in the future, severe emotional and psychological distress and injuries, all of which have manifested physically, including but not limited to depression, nightmares, stress, anxiety and physical and psychological ailments.

108.   Since the accident, Plaintiff, Jennifer Kaufman, has been in psychiatric/psychological treatment for her severe emotional distress, which will continue indefinitely into the future.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## FIRST CAUSE OF ACTION – WRONGFUL DEATH (ABIGAIL KAUFMAN)
### Plaintiffs v. Defendants

109.   The preceding paragraphs are incorporated by reference as if fully set forth herein.

110.   Plaintiffs brings this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301, and the applicable Rules of Civil Procedure and decisional law.

111.   Under the Wrongful Death Act, Plaintiffs' minor-decedent, Abigail Kaufman, left surviving the following persons who may be entitled to recover damages: Jennifer Kaufman, mother and Damien Kaufman, father.

112.   As a result of the negligence of Defendants set forth herein, Plaintiffs' minor-decedent was caused serious and grave injuries including death, resulting in an entitlement to damages by said beneficiaries under the Wrongful Death Act.

113.    Plaintiffs, as Co-Administrators of the Estate of Abigail Kaufman, deceased-minor, claims the full measure of damages recoverable under the Wrongful Death Act., including, but not limited to, damages for medical, hospital, funeral and burial expenses and expenses of administration necessitated by reason of injuries causing Plaintiffs' minor-decedent's death, damages for monetary support that Plaintiffs' minor-decedent would have provided to the beneficiaries during  Abigail Kaufman's lifetime, damages for services provided or which could have been expected to have been performed in the future by Plaintiffs' minor-decedent, and damages for the value of the Plaintiffs' minor-decedent's life and loss of companionship, comfort, society, guidance, solace, and protection, and also damages for the emotional and psychological losses suffered by the beneficiaries named herein.

114.    On behalf of the Wrongful Death Act beneficiaries, Plaintiffs claims damages for all pecuniary loss and expenses suffered by the beneficiaries.

115.    On behalf of the Wrongful Death Act beneficiaries, Plaintiffs claims the full measure of damages allowed under the Wrongful Death Act and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## SECOND CAUSE OF ACTION– SURVIVAL ACTION (ABIGAIL KAUFMAN)
### Plaintiffs  v. Defendants

116.    The preceding paragraphs of this Complaint are incorporated as though fully set forth therein.

117.    Plaintiffs brings this Survival Action on behalf of the Estate of Abigail Kaufman, deceased, under and by virtue of 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

118.    The persons entitled to the Estate of Abigail Kaufman, deceased, are as follows: Jennifer Kaufman, mother and Damien Kaufman, father.

119.    As a result of the negligence of Defendants, as set forth above, Plaintiffs' minor-decedent was caused serious and grave injuries including death resulting in the entitlement to damages under the Survival Act.

120.    On behalf of the Survival Act beneficiaries, the Administrators claims all damages available under the Survival Act, including damages for loss of earnings and economic loss to Plaintiffs' minor-decedent's estate, damages for medical expenses, damages for the loss of life's pleasures, damages for all loss of income, retirement, and Social Security income as a result of Plaintiffs' minor-decedent's death, damages for the pain, suffering, and inconvenience endured by Plaintiffs' minor-decedent prior to her death, including but not limited to, physical pain and suffering, mental pain and suffering, and the fright and mental suffering attributed to the peril leading to Plaintiffs' minor-decedent's death.

121.    Plaintiffs claim the full measure of damages under the Survival Act and decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

### THIRD CAUSE OF ACTION – WRONGFUL DEATH (BRIANNA BAER)
### Plaintiffs v. Defendants

122.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

123.    Plaintiffs bring this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S.A. §8301, and the applicable Rules of Civil Procedure and decisional law.

124.    Under the Wrongful Death Act, Plaintiffs' decedent, Brianna Baer, left surviving the following persons who may be entitled to recover damages: Jennifer Kaufman, mother and Damien Kaufman, father.

125.    As a result of the negligence of the Defendants set forth herein, Plaintiffs' decedent was caused serious and grave injuries including death, resulting in an entitlement to damages by said beneficiaries under the Wrongful Death Act.

126.    Plaintiffs, as Co-Administrators of the Estate of Brianna Baer, deceased minor, claims the full measure of damages recoverable under  the Wrongful Death Act., including, but not limited to, damages for medical, hospital, funeral and burial expenses and expenses of administration necessitated by reason of injuries causing Plaintiffs' decedent's death, damages for monetary support that Plaintiffs' decedent would have provided to the beneficiaries during Brianna Baer's lifetime, damages for services provided or which could have been expected to have been performed in the future by Plaintiffs' minor-decedent, and damages for the value of the Plaintiffs' minor-decedent's life and loss of companionship, comfort, society, guidance, solace and

protection, and also damages for the emotional and psychological losses suffered by the beneficiaries named herein.

127.     On behalf of the Wrongful Death Act beneficiaries, Plaintiffs claims damages for all pecuniary loss and expenses suffered by the beneficiaries.

128.     On behalf of the Wrongful Death Act beneficiaries, Plaintiffs claims the full measure of damages allowed under the Wrongful Death Act and the decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

## FOURTH CAUSE OF ACTION– SURVIVAL ACTION (BRIANNA BAER)
### Plaintiffs  v. Defendants

129.     The preceding paragraphs of this Complaint are incorporated as though fully set forth therein.

130.     Plaintiffs brings this Survival Action on behalf of the Estate of Brianna Baer, Deceased, under and by virtue of 42 Pa. C.S.A. §8302, and the applicable Rules of Civil Procedure and decisional law.

131.     The persons entitled to the Estate of Brianna Baer, deceased, are as follows: Jennifer Kaufman, mother and Damien Kaufman, father.

132.     As a result of the negligence of Defendants, as set forth above, Plaintiffs' minor-decedent was caused serious and grave injuries including death resulting in the entitlement to damages under the Survival Act.

133.    On behalf of the Survival Act beneficiaries, the Administrators claims all damages available under the Survival Act, including damages for loss of earnings and economic loss to Plaintiffs' minor-decedent's estate, damages for medical expenses, damages for the loss of life's pleasures, damages for all loss of income, retirement, and Social Security income as a result of Plaintiffs' minor-decedent's death, damages for the pain, suffering and inconvenience endured by Plaintiffs' minor-decedent prior to her death, including but not limited to, physical pain and suffering, mental pain and suffering and the fright and mental suffering attributed to the peril leading to Plaintiffs' minor-decedent's death.

134.    Plaintiffs claim the full measure of damages under the Survival Act and decisional law interpreting said Act.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, jointly and severally, with all Defendants named herein, for compensatory and punitive damages, in a sum in excess of seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, post-judgment interest and costs.

Respectfully Submitted,

**KLINE & SPECTER, PC**

By: _____

THOMAS R. KLINE, ESQUIRE (#28895)
AARON L. DUNBAR, ESQUIRE (#317773)
JOHN P. O'NEILL, ESQUIRE (#205677)
1525 Locust Street
Philadelphia, PA  19102
215-772-1000
Thomas.kline@klinespecter.com
Aaron.dunbar@klinespecter.com
Jack.oneill@klinespecter.com

***Attorneys for Plaintiffs***

Date:   October 19, 2022

30